UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ABDOULIE JALLOW,<br>Petitioner,<br>v.<br>TODD BLANCHE et al,<br>Respondents. | CASE NO. 2:26-cv-02114-TL<br><br>ORDER PETITION FOR WRIT OF HABEAS CORPUS |

This matter is before the Court on Petitioner Abdoulie Jallow's Petition for Writ of Habeas Corpus. Dkt. No. 4. Respondents[1] are Todd Blanche, Attorney General of the United States; Markwayne Mullin, Secretary for the U.S. Department of Homeland Security ("DHS"); Julio Hernandez, Acting Seattle Field Office Director, U.S. Citizenship and Immigration Services ("USCIS"); U.S. Immigration and Customs Enforcement ("ICE"); and Bruce Scott, Warden of the Immigration Detention Facility.

[1] As used elsewhere in this Order, "Respondents" does not include Respondent Scott, who has not appeared in this matter.

Petitioner, who is currently held at the Northwest ICE Processing Center ("NWIPC"), seeks: (1) his release from detention (*id*. at 7); (2) his release on electronic home monitoring as an alternative form of release (*id*.); (3) "an order barring his removal to any third country pursuant to DHS's punitive removal policy" (*id*.); (4) an order preventing Respondents from removing Petitioner to a third country without meaningful notice and an opportunity to respond in reopened removal proceedings (*id*. at 41); and (5) an order preventing Respondents from removing Petitioner out of this District while his habeas petition is pending (*id*. at 7–8). *Id*. at 4, 7–8. Having reviewed the petition, Petitioner's supplement to his petition (Dkt. No. 15), Respondents' return (Dkt. No. 16), Petitioner's traverse (Dkt. No. 22), and the relevant record, the Court GRANTS IN PART and DENIES IN PART the habeas petition.

## I. BACKGROUND

### A. Procedural Background

Petitioner began this action pro se by filing an application to proceed in forma pauperis ("IFP"). Dkt. No. 1. On June 22, 2026, the Court granted Petitioner's IFP application. Dkt. No. 3. That same day, Petitioner's pro se petition was filed, and Petitioner also filed a motion to appoint counsel. Dkt. Nos. 4, 5. The following day, the Court referred the matter to the Federal Public Defender ("FPD") for its review and to decide whether it would be able to represent Petitioner. Dkt. No. 8. On July 6, 2026, counsel from FPD appeared in this matter to represent Petitioner. Dkt. No. 10 (Notice of Appearance). On July 9, 2026, Petitioner filed an amended motion to appoint counsel. Dkt. No. 11. The Court granted the amended motion and adopted Petitioner's proposed briefing schedule, which allowed for an amended petition to be filed by July 24, 2026. Dkt. No. 13 (Order on Amended Motion to Appoint Counsel). Instead of filing a full amended petition, Petitioner filed a supplement to his petition, which "serve[d] as a streamlined summary of his core legal pillars and to incorporate critical factual developments since his initial filing."

Dkt. No. 15 at 1. The only new information Petitioner provides in the supplement are factual updates as to Respondents' attempts to remove him. *See id*. at 9–10. On August 7, 2026, Respondents filed a response to Petitioner's petition and supplement (Dkt. No. 16), and Petitioner filed his traverse brief a week later on August 14, 2026 (Dkt. No. 22). The matter became ripe for the Court's review on August 14, 2026.

**B. Petitioner's Immigration Background**

Petitioner is a 25-year-old native and citizen of The Gambia. Dkt. No. 4 at 2; Dkt. No. 18-4 (Notice to Appear ("NTA")) at 2. On September 8, 2019, Petitioner was admitted to the United States on an IR2 visa as a child of a United States citizen. Dkt. No. 18-4 at 2; Dkt. No. 18-3 (Order of Immigration Judge) at 2. Petitioner's familial ties in the United States include his father, stepmother, and siblings, all of whom are United States citizens.

On August 19, 2020, Petitioner committed Robbery in the First Degree, a crime he was convicted of on March 22, 2022, in Snohomish County Superior Court. Dkt. No. 18-4 at 2. Petitioner was sentenced to 31 months in state prison. Dkt. No. 4 at 2. Upon the completion of his criminal sentence on August 8, 2022, Petitioner was immediately taken into custody by Enforcement and Removal Operations ("ERO") and was transferred to the NWIPC. Dkt. No. 17 (Arambula Decl.) ¶¶ 9–10.[2] That same day, Petitioner was issued an NTA charging him as removable pursuant to sections 237(a)(2)(A)(i) and 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA") because Petitioner was convicted of a crime of moral turpitude committed within five years of admission for which he was sentenced to one year or more and

[2] Some of the facts recounted in this Order are based on the declaration of Deportation Officer Gabriel Arambula (who does not claim to have firsthand personal knowledge of most of the facts he reports (*see* Dkt. No. 17 ¶ 3), or on hearsay contained within narrative portions of documents in Petitioner's immigration record. The Court makes no findings as to whether these are true and correct statements of fact but does note that they appear to be uncontested by the Parties.

because Petitioner was convicted of an aggravated felony as defined in Section 101(a)(43)(F) of the INA. *Id.* ¶ 11. On November 8, 2022, Petitioner filed Form I-589 (Application for Asylum and Withholding of Removal) with the Immigration Court. *Id.* ¶ 14. On January 25, 2023, Petitioner had a hearing in immigration court, at which the immigration judge ("IJ") found Petitioner's criminal conviction to be an aggravated felony and a serious crime. *Id.* ¶ 15. Several weeks later, on February 16, 2023, the IJ issued an order denying Petitioner's requests for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT") and ordering Petitioner removed to The Gambia. Dkt. No. 18-3 at 14. Then began Petitioner's extensive efforts to appeal the IJ's order.

After unsuccessful appellate efforts to the Board of Immigration Appeals ("BIA"), Petitioner filed several Petitions for Review ("PFR") and motions to stay removal to the Ninth Circuit Court of Appeals between March 20, 2023, and December 8, 2025. *See* Dkt. No. 17 ¶¶ 17–34. The first two appeals were consolidated and remanded to the BIA. *Id.* ¶¶ 24–26; *see also* Order at 1, *Jallow v. Garland*, No. 23-1858, (9th Cir., Dec. 10, 2024), Dkt. No. 30. On April 11, 2025, the BIA dismissed the appeal and denied the motion. A–J–, XXX-XXX-641 (BIA July 17, 2025) at 1.[3] On April 12, 2025, Petitioner filed a motion with the BIA to reconsider its decision, *id.,* and on May 19, 2025, Petitioner filed a third PFR to the Ninth Circuit, Petition for Review, *Jallow v. Bondi*, No. 25-3199, (9th Cir May 19, 2025), Dkt. No. 1. On July 17, 2025, the BIA granted the motion to reconsider, reopened and vacated its April 11, 2025, decision, and issued a new order dismissing Petitioner's appeal. *See* A–J–, XXX-XXX-641 (BIA July 17, 2025) at 3.

[3] This unpublished decision is available as an appendix filed by the government in opposition to Petitioner's third PFR. *See* Respondent's Motion to Dismiss for Lack of Jurisdiction at 5–7, *Jallow v. Bondi*, No. 25-3199, (9th Cir., July 31, 2025), Dkt. No. 12.

On the government's motion, the Ninth Circuit dismissed the pending PFR upon finding that "[o]n July 17, 2025, the agency reopened petitioner's removal proceedings, so there is no longer a final order of removal we can review." Order at 1, *Jallow v. Bondi*, No. 25-3199, (9th Cir., Nov. 20, 2025), Dkt. No. 13.

On December 8, 2025, Petitioner filed his fourth and final PFR. *See* Petition for Review, *Jallow v. Bondi*, No. 25-7696, (9th Cir Dec. 8, 2025), Dkt. No. 1. Along with his fourth PFR, Petitioner filed a Motion to Stay his removal. Motion to Stay Removal, *Jallow v. Bondi*, No. 25-7696, (9th Cir., Dec. 8, 2025), Dkt. No. 2. As a result, Petitioner's removal was automatically, temporarily stayed by the Ninth Circuit's General Order 6.4(c)(1), which provides that "[u]pon the filing of an initial motion or request for stay of removal or deportation, the order of removal or deportation is temporarily stayed until further order of the Court." United States Courts for the Ninth Circuit, General Order 6.4(c)(1), https://perma.cc/YA3S-MGCB; *see also* Minute Order, *Jallow v. Bondi*, No. 25-7696, (9th Cir., Dec. 8, 2025), Dkt. No. 6 ("Under General Order 6.4, a temporary stay of removal is in effect until further order of the court."). The Ninth Circuit, finding that the fourth PFR was untimely, granted summary disposition for the government on January 30, 2026. *See* Order at 1, *Jallow v. Bondi*, No. 25-7696, (9th Cir., Jan. 30, 2026), Dkt. No. 14. In the same order, the Court denied Petitioner's pending motion to stay removal. *Id.* The Court of Appeals' judgment in the government's favor was final upon issuance of its mandate on March 24, 2026.

At this time, according to the declaration of Deportation Officer Arambula, Respondents have a travel document for Petitioner's removal to The Gambia. Dkt. No. 17 ¶ 42. Respondents intended to remove Petitioner to The Gambia on July 14, 2026, but the charter flight was cancelled. *Id.* ¶ 44. Respondents then intended to remove Petitioner to The Gambia via a commercial flight pending Petitioner receiving a vaccine for Yellow Fever—a requirement for

him to take a commercial flight. *Id.* ¶ 47. However, Petitioner declined the vaccine and remains at the NWIPC. *Id.* ¶ 48. Respondents now intend to remove Petitioner on the next charter flight to The Gambia, but no flight is scheduled at this time. *Id.* ¶ 49.

## II. LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)—that is, that they are "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c).

## III. DISCUSSION

Petitioner seeks a writ of habeas corpus under 28 U.S.C. § 2241 on three[4] grounds: (1) Petitioner's continued detention in immigration custody violates the Due Process Clause of the Fifth Amendment (Dkt. No. 4 at 39–41); (2) Respondents' third-country removal policy violates the Fifth Amendment, 8 U.S.C. § 1231, the INA, the Convention Against Torture ("CAT"), the Administrative Procedure Act ("APA"), and regulatory requirements (*id.* at 41–42); (3) Respondents' third-country removal policy violates the Fifth and Eighth Amendments (*id.* 43–47).

### A. Whether Petitioner's Detention Under 8 U.S.C. § 1231 Is Unreasonably Prolonged

The Parties do not dispute that Petitioner was detained subject to Section 1226(c) during his removal proceedings or that he is presently detained pursuant to Section 1231. Therefore, Petitioner's first claim is properly considered under the three-part test established in *Zadvydas v. Davis*, 533 U.S. 678 (2001).

[4] Petitioner lists four grounds as the basis of his request for relief, but the fourth is not a ground for relief, as it is a request that he be released onto electronic home monitoring.

The Supreme Court has determined that it is "presumptively reasonable" for DHS to detain a noncitizen for six months following entry of a final removal order while it works to remove the individual from the United States. *Id*. at 701. However, "[a]fter this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* This applies even if a noncitizen has a long criminal record or a history of flight from criminal or deportation proceedings as the statute, "read in light of the Constitution's demands," simply "does not permit indefinite detention" in civil immigration proceedings—nor is indefinite civil detention constitutional at all except where a "special justification" exists that is not present here. *Id.* at 689–90. If the Government fails to rebut the noncitizen's showing, the noncitizen is entitled to habeas relief. *Id*. at 701.

**1. The Length of Detention Exceeds What Is Presumptively Reasonable**

*Zadyvdas* addressed the question of "whether this post-removal-period statute"—that is, 8 U.S.C. § 1231(a)(6)—"authorizes the [government] to detain a removable [noncitizen] *indefinitely* <u>beyond the removal period</u>[.]" 533 U.S. at 682 (underlining added). Therefore, the threshold determination that must be made is when the removal period under 8 U.S.C. § 1231(a)(1) began (and, accordingly, how much time the government has had to execute a removal order). Although the Parties agree that the authority for Petitioner's detention switched from Section 1226(c) to Section 1231, they disagree on the important question of when that change occurred—that is, when Petitioner first entered the "removal period" defined in 8 U.S.C. § 1231(a)(1) and thus, crucially, whether his detention under this authority has exceeded the presumptively reasonable six months.

//

//

Title 8 U.S.C. § 1231(a) governs detention, release, and removal of individuals under a final removal order. *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022). Section 1231 also defines when the removal period begins:

> The removal period begins on the latest of the following:
>
> **(i)** The date the order of removal becomes administratively final.
>
> **(ii)** If the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order.
>
> **(iii)** If the [noncitizen] is detained or confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B). In his original petition, presented pro se, Petitioner argued that his removal period began on or about March 2, 2023, 28 days after his first removal order was issued by an immigration judge. Dkt. No. 4 at 15.[5] In his traverse, presented through counsel, Petitioner argues instead that the operative date for *Zadvydas* purposes is when his removal order became administratively final on "April 2025, the date of the last BIA decision." Dkt. No. 22 at 5 n.1 (citing Dkt. No. 17 ¶ 27).[6] Respondents, relying repeatedly on a conclusory legal opinion by

---

[5] Petitioner originally argued that because he only appealed the CAT portion of the IJ's order and not the removal portion of the order, his removal order was administratively final from the date of his deadline for appealing the IJ's order of removal, and that this is the relevant date for the *Zadvydas* analysis. *See* Dkt. No. 4 at 8–15. This argument, which Petitioner supports with largely inapposite authority, has been made previously in this District and rejected. *See, e.g.*, Order Denying Petition for Writ of Habeas Corpus at 4–5, 7, *Anyanwu v. Scott*, No. C26-1411 (W.D. Wash. Aug. 6, 2026), Dkt. No. 22 (finding that petitioner's removal was "not final for detention purposes" because his BIA appeal was pending at the time of the petition and his removal order was thus not final under 8 C.F.R. § 1241.1(a), and rejecting petitioner's "novel argument that he can dissect the August 15, 2025 removal order in two pending his BIA appeal"); *Bajay v. Blanche*, No. C26-2032, Dkt. No. 11, at 6–7 (W.D. Wash. Jul. 15, 2026) (finding that petitioner's detention was governed by Section 1226(c) because the Ninth Circuit had stayed his removal, and "reject[ing] Petitioner's arguments that because his petition for review pertains only to his CAT claim, rather than the underlying order of removal, § 1231(a) governs his detention"). The Court agrees with the *Anyanwu* and *Bajay* courts and rejects this argument (which, in any case, Petitioner appears to have abandoned on reply).

[6] The BIA's April 2025 order was not its final order on Petitioner's removal. Rather, the BIA issued its final order, and Petitioner's removal order became administratively final, on July 17, 2025. *See* A–J–, XXX-XXX-641 (BIA

their lay declarant Deportation Officer Arambula, assert that "the removal period began" when "[t]he Ninth Circuit issued the final mandate on March 24, 2026." Dkt. No 16 at 4 (citing Dkt. No. 17 ¶ 38). Omitted from both Parties' analyses are the fact that the last BIA decision was actually issued on July 17, 2025, making his removal order administratively final as of that date, and the fact that the Ninth Circuit denied Petitioner's Motion to Stay that final order of removal on January 30, 2026 (after a brief automatic stay pursuant to the Ninth Circuit's General Order).

The Parties' positions lay bare the fact that 8 U.S.C. § 1231(a)(1)(B) does not specifically discuss the scenario where, as in this case, an individual appeals the BIA decision and moves for a stay that is denied—nor does either party address the effect of an automatic *temporary* stay that does not last throughout the duration of an appeal. In interpreting a statute, a court must "strive to give effect to the plain, common-sense meaning of the enactment without resorting to an interpretation that 'def[ies] common sense.'" *United States v. Bonilla-Montenegro*, 331 F.3d 1047, 1051 (9th Cir. 2003) (quoting *Cook Inlet Native Ass'n v. Bowen*, 810 F.2d 1471, 1473–74 (9th Cir. 1987)); *see also Serrato v. John Hancock Life Ins. Co.*, 31 F.3d 882, 885 (9th Cir. 1994) (a court takes "a 'common-sense view' of the language" in a statute) (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 48 (1987)).

The only common-sense reading of the relevant statute is that even though a noncitizen's removal order becomes administratively final on the date of the last BIA decision, *see* 8 C.F.R. 8 CFR § 1241.1(a), the removal period cannot begin as long as removal is stayed by a reviewing Court of Appeals. *See* 8 U.S.C. § 1231(a)(1)(B)(ii). In a situation clearly foreseen by the statute's drafters, such a stay might be granted for the duration of the appeal and never explicitly lifted when the appeal is resolved, even if the final removal order remains in place. In such a case,

---

July 17, 2025) at 3. It is unclear why information regarding the final BIA proceeding has not been provided to the Court, especially as Respondents should have ready access to these highly relevant records.

Section 1231(a)(1)(B)(ii) clarifies that the removal period begins when the Court of Appeals enters its final mandate—that is, when appellate jurisdiction over the case ends and a durational stay ceases to restrain the government.

In this case, Petitioner filed a motion for the Ninth Circuit to stay his removal during his final appeal in case No. 25-7696, but that motion was never granted. Rather, Petitioner was granted only an automatic, temporary stay pursuant to the Ninth Circuit's General Order 6.4(c)(1). This procedural mechanism temporarily stayed Petitioner's removal and prevented the removal period under Section 1231(a)(1) from beginning until the automatic temporary stay was lifted and the government was free to execute Petitioner's removal.[7] But that temporary stay lasted only until "further order of the Court," specifically the order issued on January 30, 2026, when the Court considered *and denied* Petitioner's request that his removal be stayed during the pendency of his appeal. Therefore, when Petitioner's Motion to Stay was denied on January 30, 2026, the automatic temporary stay was no longer in place and the government was free to execute Petitioner's removal order.

Respondents, pointing to 8 U.S.C. § 1231(a)(1)(B)(ii), argue that the removal period could not have begun until "the date of the court's final order" (that, is, the mandate terminating proceedings on Petitioner's fourth and final PFR). Respondents rely on *Avilez v. Garland*, 69 F.4th 525, 531 (9th Cir. 2023), which, as they correctly note, "governs the detention of a noncitizen with a pending petition for review ('PFR') with a stay of removal in place." Dkt. No. 16 at 6. But Respondents ignore that *there was no stay of removal in place after the Ninth Circuit denied Petitioner's Motion to Stay*, and the temporary stay came to an end.

[7] The Court does not and need not consider whether Petitioner had already accrued some period of detention under Section 1231 prior to this temporary stay.

A pending PFR can only prevent the removal period from beginning to the extent it prevents a removal order from being executed. Where a PFR is filed but no judicial stay of removal is granted, the removal period is allowed to run because the appellate proceedings do not prevent the government from executing the removal order under review. *See* 8 U.S.C. § 1231(a)(1)(B)(ii). Likewise, it is a matter of common sense that the automatic, temporary stay of removal granted as a matter of course by the Ninth Circuit's General Order can only delay the removal period only as long as it presents a legal impediment to removal. Once that stay was lifted, the removal period began.

Accordingly, Petitioner's detention authority converted to Section 1231 no later than January 30, 2026, and was considered "presumptively reasonable" until (at the latest) six months later on July 30, 2026. *See Zadvydas*, 533 U.S. at 701. Petitioner filed his proposed petition on June 8, 2026, and it was posted to the docket on June 22, 2025—likely both still within the presumptively reasonable period. But by the time Respondents filed their response in this case, on August 7th, 2026 (Dkt. No. 16), the presumptively reasonable period had ended. As such, Petitioner's detention under Section 1231(a) has lasted more than six months and is no longer presumptively reasonable.

### *2.* Petitioner Has Met His Burden Under *Zadvydas*

Petitioner satisfies his burden under *Zadvydas* to show that no significant likelihood of removal in the reasonably foreseeable future exists here. Petitioner argues, in part, that removal is not reasonably foreseeable because he has been detained under Section 1231(a) for longer than six months and he has not been removed during that time. Dkt. No. 4 at 19. Although Petitioner is incorrect about the date on which the removal period began, he is correct that he has been detained for longer than six months since the removal period began—at the time of this Order he has been detained for over seven months. Petitioner provides several additional arguments in his

petition, supplement to his petition, and traverse, to demonstrate that his removal is not reasonably foreseeable. Because there have been significant factual updates since Petitioner filed his petition—namely that Respondents received a travel document from The Gambia, that Respondents issued Petitioner a notice of imminent removal, and that Respondents have twice tried to remove Petitioner—the Court will focus on Petitioner's traverse arguments, which address Respondents' counterarguments and account for all of the most recent updates.

In his traverse, Petitioner argues that the fact that he was scheduled to be removed on a charter flight that was cancelled is evidence that his removal is not imminent. Dkt. No. 22 at 7. Moreover, Petitioner argues that Respondents' concession that they can only remove him on a charter flight and no future charter flight is scheduled is further evidence his removal is not imminent. *Id*. at 8–9. Petitioner argues that his removal is not reasonably foreseeable in spite of the fact that Respondents have a travel document, highlighting that several months after the issuance of the travel document, Petitioner remains at the NWIPC. *Id*. at 8.

The Court agrees. The record in this case shows that Respondents have not been able to practically execute Petitioner's removal even when legally authorized to do to. Therefore, the Court finds that Petitioner satisfies his burden to provide good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.

***3.* Respondents Have Not Met Their Burden Under *Zadvydas***

Respondents have not rebutted Petitioner's showing that removal is not significantly likely. Respondents' primary argument is that because they have a travel document for Petitioner, he will be removed on the next charter flight and, thus, there is a "substantial likelihood of his removal in the reasonably foreseeable future." Dkt. No. 16 at 5. But Respondents offer no information about when another charter flight will be offered, if at all, or the frequency with which charter flights to The Gambia are scheduled. This lack of information

does not inspire confidence in the Court that removal is reasonably foreseeable. Moreover, this argument ignores the fact that the first time Respondents attempted to remove Petitioner on a charter flight, the flight was cancelled (*see* Dkt. No. 17 ¶ 44), and that as of the date of this Order over two months since the cancelled charter flight, Respondents still have not been able to remove Petitioner.

Further, Respondents do not provide any indication that they will be able to remove Petitioner before his travel document expires on December 18, 2026, nor that they would be able to quickly attain a renewed travel document after expiration. This is noteworthy as it would not be the first time this District has seen a travel document expire before Respondents were able to remove a noncitizen. *See, e.g.*, *Teweldemedhin v. Noem*, No. C25-2363, 2026 WL 172029, at *3 (W.D. Wash. Jan. 22, 2026) ("Respondents held Mr. Teweldemedhin in ICE custody for over two months, without effectuating his removal to Eritrea, before the travel document subsequently expired."); *see also Osman v. Blanche*, No. C26-2311, 2026 WL 2184971, at *2 (W.D. Wash. July 29, 2026) (removal not effectuated where travel document issued for petitioner in detention expired in under three months); *Morisath v. Scott*, No. C26-1364, 2026 WL 1440065, at *4 (W.D. Wash. May 21, 2026) ("after taking Petitioner into custody, Respondents allowed the travel document they had obtained for Petitioner to expire without effectuating his removal."). It is nonsensical that Petitioner should have to wait out the expiration of his current travel document in detention (and, in turn, remain in detention for nearly eleven months since his removal period began) without any indication from Respondents that a charter flight will be scheduled before then. Finally, Respondents argue that Petitioner is to blame for not being removed. *See* Dkt. No. 16 at 2, 5. But Respondents provide no authority that Petitioner's refusal to get a vaccine, which resulted in his disallowance from a commercial flight, would indicate that Respondents have met their burden under *Zadvydas*. In fact, this argument ignores that Petitioner

*has* cooperated with removal efforts, and his cooperation is a key reason why Respondents even have a travel document to begin with. *See* Dkt. No. 17 ¶ 40 ("Petitioner had a video meeting with Gambian Consulate staff as part of the process of having a travel document issued for his removal."). In totality, Respondents' arguments fail to rebut Petitioner's showing that removal is not reasonably foreseeable.

Accordingly, the Court finds that Petitioner's removal is not reasonably foreseeable, his detention has become indefinite, and a writ of habeas corpus is warranted. The Court grants Petitioner's request for habeas relief and orders that Respondents immediately release him from custody.

**B. Injunctive Relief**

Petitioner makes several requests for injunctive relief regarding any removal during the pendency of this petition, as well as any potential future removal to a third country. *See* Dkt. No. 4 at 7–8, 41. However, there are standards a moving party must meet to be granted injunctive relief, none of which Petitioner addresses. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (establishing factors for entitlement to injunctive relief); *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1243 (9th Cir. 2018); *see generally* Dkt. No. 4. The Court acknowledges that a pro se complaint must be "liberally construed" and held "to less stringent standards than formal pleadings drafted by lawyers." *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 923 n.4 (9th Cir. 2011) (citation modified) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Even so, a court "should 'not supply essential elements of the claim that were not initially pled.'" *Henderson v. Anderson*, No. C19-789, 2019 WL 3996859, at *1 (W.D. Wash. Aug. 23, 2019) (quoting *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997)). Petitioner's pro se petition did not reference the standards for injunctive relief; therefore, Petitioner stops short of making arguments that connect the standards for

injunctive relief to the facts of his case. Moreover, such arguments are also absent from his supplement to the petition, as well as his traverse, both of which he filed with the assistance of counsel. Therefore, Petitioner's injunctive relief requests are DENIED.

## IV. CONCLUSION

Accordingly, Petitioner's Petition for Writ of Habeas Corpus (Dkt. No. 4) is GRANTED IN PART and DENIED IN PART. It is hereby ORDERED:

(1) Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them:

  (a) SHALL release Petitioner from detention within **twenty-four (24) hours** of this Order under appropriate conditions of release; and

  (b) SHALL submit to the Court, within **forty-eight (48) hours** of Petitioner's release from detention, a declaration or status report confirming that Petitioner has been released from custody and informing the Court of the date and time of his release.

(2) Petitioner's request for an order barring Respondents from removing or seeking to remove Petitioner to any third country without notice and a meaningful opportunity to be heard in reopened removal proceedings with a hearing before an immigration judge is DENIED.

(3) Petitioner's request for a permanent injunction regarding re-detention is DENIED.

(4) Petitioner's request for an order prohibiting third-country removal as unconstitutionally punitive is DENIED.

Dated this 11th day of September, 2026.

Tana Lin
United States District Judge